UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-480-FDW

| | |
|---|---|
| TOMMIE E. PARKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ) | |
| LEWIS SMITH, Administrator ) | |
| of Public Safety, ) | |
| ) | |
| Respondent. ) | |

**THIS MATTER** is before the Court on an initial review of the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. See Rule 4 Governing Section 2254 Proceedings.

## I.  BACKGROUND

According to the North Carolina Department of Public Safety, Petitioner is a prisoner of the State of North Carolina incarcerated in the Albemarle Correctional Institution. Petitioner's projected release is February 15, 2021. In his habeas petition, Petitioner notes that he was convicted in Mecklenburg County Superior Court of common law robbery, first degree burglary and he admitted his status as a habitual felon. Petitioner filed a direct appeal. In an opinion filed on June 17, 2008, the North Carolina Court of Appeals summarized the evidence as follows:

> The State's evidence at trial tends to show that on the night
> of 9 April 2006, Odessa Parks was sleeping at home alone when she
> heard a noise in her bedroom. She first thought the noise was
> caused by her cat. She then realized a person was standing at her
> dresser, and she could see that the person was wearing dark
> clothing by a light coming in through the window from a street lamp
> outside. The intruder turned around, grabbed her arm, and put a

1

pillow over her face. He put his hands around Ms. Parks' neck, and she asked him to take the pillow off, telling him that he was smothering her. He took the pillow off and demanded several times to know where she kept her money.

Ms. Parks stated she recognized that the intruder was defendant, and she recognized his voice. Defendant is related to Ms. Parks, and she has known him for his whole life. She allowed defendant to live with her on occasion, and she fed him somewhat regularly whenever he needed a meal, including breakfast on the morning before this incident occurred. Ms. Parks eventually told defendant that her money was in a dresser drawer, and he took $40.00 from the drawer. He took her arm and led her to the front door, where he knocked the door down and ran away. Defendant was not living with Ms. Parks at the time and did not have permission to be in her home that night.

Ms. Parks' grandson Gary Parks was living with her at the time of the incident, but he was away from the house working at his job from 11:00 p.m. to 7:00 a.m. when the robbery occurred. He stated that his grandmother had already gone to bed when he left for his shift and that the front and back doors to the house were locked when he left. In the middle of his shift, he received a call that someone had broken into Ms. Parks' house, and he went home at approximately 3:15 a.m. to check on his grandmother. After confirming that she was not injured, Gary Parks returned to work to finish his shift, and when he got home in the morning, he called the police around 8:00 a.m.

When interviewed by a police officer, Ms. Parks identified defendant as the intruder and never wavered in her conviction that defendant was the person who broke in and stole her money. Gary Parks showed the police officer the back door, which had been pried open. Although several tools were in the backyard which might have been used to pry the door open, because it had been several hours since the robbery, the police considered the scene to be contaminated and did not take fingerprints.

Nina Grigley, an acquaintance of defendant, testified that she had been at a friend's house the night of the incident with two friends and defendant. The friend's house was in the same neighborhood as Ms. Parks' house. Ms. Grigley and the others were doing drugs. Defendant stated he was going to get money from someone's house, and he left. He returned sometime later, breathing hard as though he had been running. He told the group he

2

> had been to his grandma's house, and Ms. Grigley took that to mean
> Odessa Parks, since she was the only person with the name Parks in
> that neighborhood. Although the group spent some time riding
> around in a car after defendant returned, when morning came, Ms.
> Grigley called Ms. Parks to see if she was all right and went to
> her house. From there, Ms. Grigley called the police to tell them
> about defendant's statements. Defendant declined to offer any
> evidence on his behalf.

State v. Parks, 191 N.C. App. 253, 662 S.E.2d 405 (Table) (N.C. Ct. App. 2008) (unpublished). It does not appear from the habeas petition that Petitioner filed a petition with the Supreme Court of North Carolina. However, a search of Westlaw shows that the Supreme Court denied a petition for discretionary review on October 9, 2008. State v. Parks, 668 S.E.2d 569 (N.C. 2008).

On January 20, 2011, Petitioner filed a motion for appropriate relief ("MAR") with the Mecklenburg County Superior Court. Petitioner raised a challenge to the legality of his 2007 convictions contending that one or more criminal charges from the 1980's were improperly used to calculate his criminal history points. (Doc. No. 1-1 at 3-4). On February 8, 2011, the superior court filed its decision denying his MAR after concluding that "identical issues were resolved against him by the North Carolina Court of Appeals in a decision rendered on July 7, 2008." (Id. at 1: Order). The court of appeals denied his petition for a writ of certiorari on August 3, 2011. (Id. at 5).

Petitioner avers he mailed the present habeas petition on June 30, 2013, and on August 22, 2013, the same was docketed by the clerk of court. Petitioner raises four claims for relief: violation of the ex post facto clause in the state court's use of a prior conviction; credibility of witnesses; miscarriage of justice/attorney malpractice; and some apparent objection to police

3

reports from an unnamed investigation. (Doc. No. 1).[1]

## II. DISCUSSION

It appears from the record in this matter that Petitioner's habeas petition is untimely. The AEDPA provides in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from timely filing;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)-(D).

The North Carolina Court of Appeals filed its opinion affirming Petitioner's criminal judgment in all respects on June 17, 2008, and the Supreme Court of North Carolina denied discretionary review on October 9, 2008. According to his habeas petition, Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States and he did not pursue further state review until January 20, 2011, and his federal habeas petition was not filed

---

[1] It appears that Petitioner is presenting claims in this proceeding that he did not present to the state courts; namely, his claims regarding credibility, prosecutorial/attorney misconduct, and police reports. The Court finds that to the extent these claims are unexhausted, they are nevertheless untimely and will be dismissed. See 28 U.S.C. § 2254(b)(2) (providing for the dismissal of unexhausted claims).

until August 22, 2013.[2] Because Petitioner did not seek review from the Supreme Court or otherwise seek state relief until January 20, 2011, Petitioner must have filed his habeas petition by on or about January 9, 2010. See, e.g., Clay v. United States, 537 U.S. 522, 527-38 (2003) (providing for final judgment if petition for writ of certiorari not filed within 90 days); 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed State post-conviction or other collateral review with respect to the pertinent judgment shall not be counted toward any period of limitation under this subsection.").[3]

Based on this timeline, Petitioner's habeas petition is untimely as it was filed over three and a half years after his state judgment became final and it must be dismissed unless Petitioner can establish that he is entitled to equitable tolling.[4] An untimely petition can be considered on the merits if the petitioner can demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. __, 130 S.Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Petitioner's explanation that his delay in filing for habeas relief is attributable to the North Carolina Court of Appeals or North Carolina Prisoner Legal Services is unavailing. As noted, Petitioner did not raise claims in state court following the conclusion of the direct review

---

[2] Although Petitioner dates his habeas petition June 30, 2013, the postmark on the envelope containing the petition is dated August 21, 2013. See (Doc. No. 1-4).

[3] Petitioner's effort to pursue relief in his January 2011 MAR cannot serve to render his federal petition timely. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000) (finding that the limitation period is not tolled after a conviction has become final on direct review and prior to filing a MAR).

[4] Petitioner cannot satisfy any of the other provisions of § 2244(d) regarding timeliness. In addition, the Court finds that Petitioner understands that his petition is untimely as he clearly assigns blame to the court of appeals and North Carolina Prisoner Legal Services. The Court finds that in light of these findings, no warning needs to be issued before considering *sua sponte* dismissal based on the statute of limitations. See Hill v. Braxton, 277 F.3d 701, 706-07 (4th Cir. 2002).

5

of his 2007 convictions until January 2011. Therefore, no matter the alleged action or omissions which Petitioner contends inspired his delay, his one-year limitation under § 2244(d) was fully expired before he ever presented claims through his belated MAR in 2011.

In sum, Petitioner's claims in the present petition are cryptic and without any reasonable factual support. He appears to attack the sufficiency of the evidence against him in his 2007 trial, a claim rightfully denied on direct review, and he calls into question the actions of the prosecutor, and the effectiveness of his attorney. Critically, however, Petitioner offers no credible explanation regarding why he did not raise these claims in a federal proceeding until some three and half years after his state judgment became final for purposes of federal habeas review.

For the reasons stated herein, the Court finds that Petitioner's petition is untimely and that he is not entitled to equitable tolling because there is no showing that he has diligently pursued his rights or that any circumstance impaired his ability to pursue these challenges until now. Finally, there is no credible showing of actual innocence in this case as the evidence presented at trial was overwhelming. Accordingly, this habeas petition will be dismissed.

### III.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's petition for a writ of habeas corpus is **DISMISSED** as untimely (Doc. No. 1);

2. Petitioner's motion for production of exculpatory evidence is **DENIED** (Doc. No. 2);

3. Petitioner's motion to appoint counsel is **DENIED** (Doc. No. 3);

4. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court

declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: August 24, 2013

Frank D. Whitney
Chief United States District Judge